**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Criminal No.   1:17CR00030-002** |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| | ) | |
| **JEREMY STROM,** | ) | |
| | ) | |
| **Defendant.** | | |

The defendant, Jeremy Strom , through counsel, hereby submits the following Sentencing

Memorandum for the sentencing scheduled for June 1, 2018

## I.    Witnesses

The defendant does not anticipate calling any witnesses at the sentencing hearing.

Defendant reserves the right to testify on his own behalf.

## II.   Exhibits

Defendant does not intend of offering any exhibits.

## III.   Issues

a) The total amount of drugs attributable to defendant and the corresponding base offense

level.

b) Whether defendant should receive a 2 level adjustment for acceptance of

responsibility.

1

c) Whether defendant's prior assault conviction ( PSIR ¶ 93) qualifies as a predicate offense for a career offender designation pursuant to USSG §4B1.1

d) Whether defendant should receive criminal history points for the offense listed at PSIR ¶ 81. ( A ruling on this issue will have no effect on the guideline range)

e) Whether a guideline sentence is sufficient but not greater than necessary when considering the factors set out in 19 USC 3553(a) and when compared to sentences received by far more culpable participants in the conspiracy.

## IV.   Arument

Jeremy Strom had a tough begging in life. Being born to an abusive father, a drug addicted and abusive mother. Unlike most children, instead of hugs he received beatings that blackened his eyes and bloodied his nose.( PSIR 129). His later childhood was spent in the custody of a great aunt and uncle. However, they both died while he was still very young. A short time later he ended up in a juvenile detention facility. Id. 130. He has a romantic committed relationship with Tracy Krueger which has been tumultuous. They continue to care for each other and remain in close contact. Id. 188(a)

Defendant has a long history of severe methamphetamine abuse starting at a young age. All of his drug related convictions are meth related: PSIR 80: 1997 - Possession, 3 year suspended sentence; PSIR 81   1998 , possession, AGG Misd. 2 year suspended; PSIR 84 2003, misdemeanor possession, note defendant possessed a syringe: PSIR 85, 2003 Possession 1 year suspended; PSIR 88 2004 Possession 5 years prison; PSIR 89, 2007 Possession of meth with intent to distribute, ( sold one ounce to undercover) 10 years sentence; PSIR 90, 2010 accessory to a felony, meth, 2 years, baggie of meth found with propane tank and syringe: PSIR 92;

2

possession, 16.4 grams and meth pipes found on defendant. 20 to 24 months. All of his previous convictions indicate defendant is a severe meth addict who sold relatively small quantities of meth.

In the present case, there are several people who proffered with law enforcement giving often inconsistent statements alleging defendant was dealing far more meth than he actually was. Defendant filed numerous objections to the allegations relating to drug quantity. Defendant asserts he should be held liable for 1.5 to 5 kilos of meth mixture for a base offense level of 32.

With the exception of one attempted controlled buy for two ounces, virtually all of the drug quantity assessed against defendant is based entirely on unreliable cooperator testimony. The only attempted controlled buy occurred in March 2017 when a CS attempted to purchase two ounces from Defendant. The deal fell apart when defendant insisted on an upfront payment so he could collect the drugs from his source. The only law enforcement verified transaction involving this defendant indicates he was nothing more than a small time dealer who had to middle deals because he had no supply of his own. Id. 18.

**Defendant should receive a 2 level reduction for acceptance of responsibility.**

Defendant and Ms. Krueger have been in a romantic relationship for the last several years. At the same time defendant learned she was to testify before the grand jury he also believed she was seeing another man. He was understandably jealous and enraged. He admits he made rash comments to her, but asserts his comments were fueled by his mistaken belief she was attempting to get rid of him so she could be with someone else. She moved back in with him even after he found out she was going to testify and he encouraged her to go and tell the truth. After his initial shock and outrage, he did nothing to prevent her from testifying.

**Defendant's misdemeanor assault conviction at PSIR 93 is not a predicate offense for the career criminal enhancement.**

The offense listed at AGCR015515 (PSIR ¶ 93) is not a crime of violence under *Mathis v. United States*, 136 S.Ct 2243 (2016).    The Iowa assault statute lists different means by which a person may commit an assault:

> 1. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

> 2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

> 3. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

Not all alternatively worded statutes are divisible.   *Mathis v. United States*, 136 S. Ct. 2243 (2016).   "The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means."   *Id.* at 2256.   If they are elements, the court may employ the modified categorical approach and look beyond the statutory elements to a restricted set of materials, such as plea agreements or transcripts of plea colloquies, to determine which element formed the basis for defendant's conviction.   *Id.*   However, as in this case if they are means, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution."   *Id.*   The court may ask only whether the elements of the state crime match the generic offense, regardless of how a defendant may have actually committed the offense.   *Id.* at 2256.

Iowa law does not require unanimity by the jury as to the manner in which the act

violates the statute, meaning the manner, or means, of committing the act cannot be an element of the assault offense.   *See State v. Beck*, 854 N.W.2d 56, 66 (Iowa Ct. App. 2014) (referring to §§ 708.1(1) and (2) as "modes" of committing assault); *State v. Shiltz*, No. 02-1908, 2004 WL 136375, at *2 (Iowa Ct. App. 2004) (concluding that the Iowa assault statute defines several alternative **means** of committing the same crime, and the unanimity of the means of commission was not required).

Here, the Iowa assault statute is broader than the generic definition of assault. The court may only look to the elements of the statute and may not resort to the categorical approach to determine the means by which defendant may have committed the underlying offense. The Iowa assault statute is categorically overbroad because the jury need not decide if the defendant merely had an insulting contact with someone (subsection 1) or pointed a firearm at them (subsection 3). Under Mathis, it makes no difference that THIS particular defendant was convicted under subsection (3)--the categorical approach simply does not allow us to consider that because the statute is indivisible.   Thus, because the Iowa assault statue is broader than the generic assault offense, defendant's prior conviction under that statute cannot be used as a predicate offense to support the career criminal enhancement.

Probation responded to defendant's objection citing *United States v. Boots*, 816 F.3d 971 ( 8th Cir. 2016) standing for the proposition that a conviction under Iowa Code § 708.1(3) and § 708.2(3) categorically qualifies as a crime of violence. The case does not apply for two reasons, first, *Boots* was decided in March, 2016 while *Mathis* was decided in June 2016. Secondly, *Boots* dealt specifically with a conviction under Iowa Code 708.1(3), assuming the court did not look beyond the charging documents to glean that fact. *Boots,* 973-74. In the present case Strom's

conviction references only ICA 708.1 and 708.2(3). 708(3) Merely requires that " a person who commits and assault, as defined in section 708(1), and uses or displays a dangerous weapon in connection with the assault is guilty of an aggravated misdemeanor." 708(3) does not require a conviction under 708.1(3) for the enhanced punishment. It merely requires defendant plead to an assault, of whatever nature, as minor as an offensive touching, and that a dangerous weapon was involved.

This court is prohibited under *Mathis* to go beyond the statute of conviction to determine whether defendant's misdemeanor assault conviction qualifies as a generic crime of violence. As such, it cannot qualify as a predicate offense for application of the career criminal enhancement

**Recommended Guideline range:**   Defendant objected to probation's calculation of the recommended guideline range. Defendant asserts his base offense level should be 32, plus two levels for obstruction based on his plea to the obstruction count, less 2 for acceptance of responsibility for a total offense level of 32. Based on a criminal history category VI his recommended range should be 210 to 262.

## V.    Conclusion

Defendant requests a sentence sufficient but not greater than necessary to meet the sentencing goals of 18 USC § 3553(a).

Defendant has no objection to the recommended special conditions of supervision.

6

Respectfully submitted,

FEDERAL DEFENDER'S OFFICE
701 Pierce Street, Suite 400
Sioux City, Iowa 51101
Ph (712) 352-0552; alt ph (712) 252-4158
E-mail: Mike_Smart@fd.org
Contact E-Mail: Annette_Torgerson@fd.org


By: ___/s/ Michael L. Smart_____
MICHAEL L. SMART
ATTORNEY FOR DEFENDANT


CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2018, I electronically filed this document with the Clerk of
Court using the ECF system which will serve it on the appropriate parties.
/s/ Annette Torgerson

cc via ECF: AUSA